# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

MALCOLM PHILLIPS,

    Petitioner,

v.

WARDEN, NOBLE CORRECTIONAL INSTITUTION,

    Respondent.

CASE NO. 2:19-CV-03021
JUDGE SARAH D. MORRISON
Magistrate Judge Kimberly A. Jolson

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition, Respondent's Return of Writ, and the exhibits of the parties. For the reasons that follow, the Undersigned **RECOMMENDS** that this action be **DISMISSED.**

## I. FACTS AND PROCEDURAL HISTORY

Petitioner challenges his January 2014 convictions after a jury trial in the Franklin County Court of Common Pleas on possession of drugs with a firearm specification and having a weapon while under disability. The Ohio Tenth District Court of Appeals summarized the facts and procedural history of the case as follows:

> By indictment filed July 20, 2012, plaintiff-appellee, the State of Ohio, charged appellant with one count of possession of cocaine, in violation of R.C. 2925.11, a first-degree felony with an accompanying firearm specification, and one count of having a weapon while under disability, in violation of R.C. 2923.13, a felony of the third degree.
>
> At trial, the state presented evidence that a trash pull conducted on January 27, 2012 at appellant's residence produced a trace amount of cocaine and packaging materials consistent with cocaine trafficking. A subsequent search warrant issued on January 31, 2012, based in part on the result of the trash pull, yielded approximately $5,000 in cash and a digital scale with a trace amount of cocaine on

it. The next day, February 1, 2012, appellant rented a storage unit at 5275 Gender Road.

Two days later, on February 3, 2012, appellant was a passenger in his own vehicle being driven by Bruce Wiggins. During a traffic stop and search of the vehicle, police arrested appellant for possession of marijuana and cocaine. Police conducted a search incident to arrest of appellant's person and found an access card for the storage unit. Later that day, police located the storage unit, and a police canine alerted to the presence of a narcotics odor inside the unit. While police waited for a search warrant to issue, two plain-clothes police officers guarding the unit saw appellant driving his vehicle toward the unit. Two other men, Wiggins and Deandre Green, were in the vehicle with appellant. The three men attempted to flee the scene, but police eventually apprehended appellant.

Once the search warrant for the storage unit issued, police officers opened the unit and found that it was largely empty. The only items in the storage unit were an empty box and a black duffel bag. The duffel bag contained 138 grams of cocaine, two firearms, and cash.

Following the trial, the jury returned guilty verdicts as to all counts. After a sentencing hearing, the trial court sentenced appellant in a January 13, 2014 judgment entry to a term of imprisonment totaling 13 years. Appellant timely appealed his conviction to this court, and that appeal is still pending. *State v. Phillips*, 10th Dist. No. 14AP–79.2

On January 13, 2014, appellant filed a motion for a new trial based on newly discovered evidence pursuant to Crim. R. 33(A)(6). Appellant included with his motion an affidavit from Green. The trial court conducted a hearing on appellant's motion on February 21 and March 28, 2014. Green, appellant's only witness at the hearing, testified that he approached appellant's counsel after appellant's sentencing to inform him that the drugs found in appellant's storage unit actually belonged to Wiggins.

According to Green's testimony, Wiggins called Green a week before appellant's arrest to tell Green that he "had came [sic] up on some stuff like and he was going to make a lot of money off of it." (Feb. 21, 2014 Tr. Vol. I, 15–16.) Green understood the "stuff" to mean drugs that Wiggins had stolen from someone else. Green further testified that, on February 3, 2012, Wiggins called Green after appellant's arrest for drug possession. According to Green's testimony, in this conversation, Wiggins informed Green that appellant was going to jail, and Wiggins said he needed to "find something to do with this other stuff that I got." (Feb. 21, 2014 Tr. Vol. I, 20.) Green then testified that, when he accompanied Wiggins and appellant to the storage unit, it was Wiggins who yelled for appellant to "pull off" and to "get out of here" after spotting the plain-clothes police officers. (Feb. 21, 2014 Tr. Vol. I, 18.) When asked why he did not come forward with this information before or during appellant's trial, Green testified he "was scared, and

* * * didn't want to get in no trouble also." (Sic.) (Feb. 21, 2014 Tr. Vol. I, 22.) Green also testified he did not realize appellant would face such a severe sentence for these crimes.

In a decision and entry dated April 2, 2014, the trial court denied appellant's motion for a new trial. Appellant timely appeals.

*State v. Phillips*, 10th Dist. No. 11AP-362, 2014 WL 5768688, at *1–2 (Ohio Ct. App. Nov. 6, 2014). On November 6, 2014, the appellate court affirmed the trial court's judgment. *Id.* Next, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Phillips*, 142 Ohio St. 3d 1466 (Ohio 2015).

The case then took an unexpected turn, which led to Petitioner seeking a new trial. The issue ultimately was appealed, and the Tenth District explained what had happened:

{¶ 3} On February 24, 2016, the Franklin County Prosecutor's Office sent a letter to appellant's counsel. In that letter, the prosecutor wrote that one of the state's witnesses at appellant's trial, Tye Downard, who at the time was a detective with the Reynoldsburg Police Department ("RPD"), had been arrested by the Federal Bureau of Investigations and charged in federal court with possession with intent to distribute drugs. Downard's alleged conduct occurred between October 2015 and February 2016. Downard killed himself in jail days after his arrest. In light of that development, appellant filed a motion for leave to file a motion for new trial based on newly discovered evidence, arguing in part that Downard's testimony was no longer credible. The state opposed appellant's motion, arguing that Downard's alleged criminal conduct was not material to appellant's defense and that Downard played a very minimal role in appellant's case.

{¶ 4} Shortly after filing his motion, appellant supplemented the motion with evidence that another RPD officer involved in appellant's case, Sergeant Shane Mauger, had agreed to plead guilty in federal court to counts of conspiracy to deprive persons of civil rights and federal program theft. The convictions were based upon Mauger's conspiracy with others to steal money and property that he obtained from the execution of search warrants or other police actions. Appellant also alleged that Mauger had filed search warrant affidavits that contained false statements. Again, appellant challenged the credibility of Mauger's testimony during appellant's trial based upon Mauger's convictions. In its response, the state emphasized the minimal role that Mauger played in appellant's case.

{¶ 5} The trial court denied appellant's motion for leave to file a motion for a new trial. The trial court concluded that the evidence of Downard's and Mauger's criminal conduct was not material to appellant's defense because the case against

3

him was "overwhelmingly" handled by the Whitehall Police Department ("WPD"). Although the trial court noted Downard's and Mauger's "small role" in the beginning of the case, it concluded that the evidence against appellant was obtained by the WPD and not by the RPD. The trial court also noted that appellant's defense at trial did not involve the credibility of either of these witnesses. Rather, his defense was based on his assertion that the drugs and weapon found by the police were not his.

*State v. Phillips*, 10th Dist. No. 17AP-21, 2017 WL 4334159, at *1–2 (Ohio Ct. App. Sept. 29, 2017). On September 29, 2017, the appellate court affirmed the judgment of the trial court. *Id*. The Ohio Supreme Court again declined to accept jurisdiction. *State v. Phillips*, 153 Ohio St. 3d 1442 (Ohio 2018).

On July 12, 2019, Petitioner filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts the following claims:

1. The Defendant was denied a full and fair opportunity to present his Fourth Amendment Claim of Unreasonable Search And Seizure during the State Court Trial Proceedings.

Reynoldsburg Police Detectives Shane Mauger and Tye Downard executed the search of Petitioner's house at 5903 Little Brook Way, Columbus, Ohio 43232 on January 31, 2012. Mauger's affidavit was false and misleading and was presented to the FCMC Judge (William Pollitt) who issued the Warrant to Search the house. During the execution of the warrant to search drugs and money were seized. Mauger kept some of the cocaine and US Currency that he seized for his personal use. Evidence from this search was used to support the warrant to search the storage unit. These facts were not disclosed to Petitioner during the trial proceedings. Petitioner was not granted a full and fair opportunity to develop and present these facts in State Court because his Petition for Leave to File the Motion for a New Trial was denied and he was denied an Evidentiary Hearing.

2. Petitioner was denied Due Process and a Fair Trial.

The State failed to disclose the criminal activity of their trial witnesses Shane Mauger and Tye Downard. Both were involved in on-going drug dealing and theft at the time they testified in Petitioner's trial. Mauger had presented false and misleading testimony in an affidavit to support the search warrant of Petitioner's house, stole drugs and money during that search, and the evidence obtained during that search was used to support the search warrant for the storage unit. Drugs and money were also taken during an illegal search of the storage unite prior to the warrant to search arriving at the storage unit. None of these facts have been

disclosed to Petitioner. The only facts that have been disclosed are the facts of the federal criminal indictments of Mauger and Downard.

(Doc. 6 at 5–7).

It is the position of the Respondent that Petitioner's claims do not provide a basis for relief. (*See generally* Doc. 6).

## II. STANDARD OF REVIEW

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this case. The United State Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks, citations, and footnote omitted) ("AEDPA ... imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.").

AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, the factual findings of the state court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual

issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Accordingly, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)). The United States Court of Appeals for the Sixth Circuit has summarized these high standards:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley*, 706 F.3d at 748–49. Ultimately, the burden of satisfying AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. DISCUSSION

As noted, Petitioner has raised two claims.

#### A. CLAIM ONE

In his first claim, Petitioner asserts that his convictions violate the Fourth Amendment and that the state courts denied him a full and fair opportunity to litigate this claim. Specifically, Petitioner argues that Reynoldsburg Police Detectives Mauger and Downard executed a warrant

6

at his home based on a false and misleading affidavit and then used evidence illegally seized from his home to obtain a warrant to search his storage unit. Petitioner further claims that Mauger and Downard unlawfully confiscated drugs and money for their own personal use. And he asserts that he did not find out about the illegal conduct until after his trial. So, Petitioner argues, he could not use the evidence of law enforcement's illegal activity at the hearing on his motion to suppress or use such evidence for impeachment purposes.

But Petitioner is asking too much of established Fourth Amendment precedent. Indeed, Fourth Amendment claims do not provide a basis for federal habeas corpus relief so long as the petitioner had a "full and fair opportunity" to raise the issue in the state courts, and "presentation of the claim was not thwarted by any failure of the state's corrective processes." *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (citing *Stone v. Powell*, 428 U.S. 465, 494–95 (1976)). Often called the "*Stone* rule," the reasoning behind the bar on such claims is two-fold:

> One, the key purpose of federal habeas corpus is to free innocent prisoners. But whether an investigation violated the Fourth Amendment has no bearing on whether the defendant is guilty.[*Stone v. Powell*] at 490, 96 S.Ct. 3037. Two, exclusion is a prudential deterrent prescribed by the courts, not a personal right guaranteed by the Constitution. Any deterrence produced by an additional layer of habeas review is small, but the cost of undoing final convictions is great. *Id.* at 493, 96 S.Ct. 3037.

*Good v. Berghuis*, 729 F.3d 636, 637 (6th Cir. 2013). Further, Ohio provides criminal defendants a procedural mechanism whereby to raise a claim under the Fourth Amendment. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982). Thus, "[i]n the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedure for resolving the claim." *Wangler v. Sheldon*, 2015 WL 13730919, at *10 (N.D. Ohio Oct. 19, 2015) (quoting *Good*, 729 F.3d at 639).

Here, the trial court conducted a hearing on Petitioner's motion to suppress evidence. (*Transcript,* Doc. 5-1). Petitioner then exercised his right to appeal the trial court's decision in the

7

Ohio Court of Appeals and the Ohio Supreme Court. The state appellate court issued a lengthy decision rejecting Petitioner's claim under the Fourth Amendment. *State v. Phillips*, 2014 WL 6482778, at *6–12 (Ohio Ct. App. Nov. 20, 2014).

Importantly, Petitioner's assertion that the state court erred does not affect *Stone*'s bar to review of his claim in these proceedings. *See Emerson v. Kelly*, No. 1:14-cv-00809, 2015 WL 3968250, at *17 (N.D. Ohio June 30, 2015). Indeed, "the Sixth Circuit has made clear that a state court 'need do no more than take cognizance of the constitutional claim and rule in light thereof.'" *Id*. (quoting *Riley*, 674 F.2d at 525).

Petitioner nonetheless argues that the State deprived him of a full and fair opportunity to litigate his Fourth Amendment claim because he did not learn—until after his trial had concluded—that officers Mauger and Downard had been involved in criminal activities during the of their involvement in his case, and the trial court refused to grant him an evidentiary hearing for further factual development of this claim upon the filing of his motion for a new trial. The Court is not persuaded. Notably, the state appellate court found that Mauger and Downard had limited involvement in Petitioner's case. *See State v. Phillips,* 10th Dist. No. 17AP-21, 2017 WL 4334159, at *3–4 (Ohio Ct. App. Sept. 29, 2017). These findings are presumed to be correct, 28 U.S.C. 2254(e)(1), and Petitioner does not dispute them. Thus, based upon the record, neither Mauger nor Downard played a significant role in the events leading up to or supporting the search of the automobile or the storage bin, which formed the basis for the charges against Petitioner.

Given these facts, *Brown v. Berghuis*, 638 F.Supp.2d 795 (E.D. Mich. July 29, 2009), is useful to the analysis here. In that case, the United States District Court for the Eastern District of Michigan rejected the argument that the testimony of police, subsequently charged and convicted

8

in federal court on criminal charges—even if deliberately false—had deprived the defendant of a full and fair opportunity to litigate his Fourth Amendment claim:

> [P]etitioner has cited no case law supporting his claim that Lt. McNamara's alleged perjury at the suppression hearing deprived him of a full and fair opportunity to litigate his Fourth Amendment claim. On the contrary, the little case law that exists addressing this issue suggests the opposite. *See Sneed v. Smith*, 670 F.2d 1348, 1356 (4th Cir. 1982) (*Stone* rule "would of course be swallowed if impairment [of a full and fair opportunity to litigate] could be shown simply by showing error—whether of fact or law—in the state court proceeding. Sneed's suggestion of perjury is merely a suggestion of factual error."); *Carr v. Runnels*, No. C 03–1369, 2007 WL 133971, at *5 (N.D.Cal. Jan. 16, 2007) (although the use of perjured *812 testimony may state an independent due process claim, it "does not call into question the adequacy of the state hearing procedures with which petitioner was provided."); *Hernandez v. Filion*, No. 05 Civ. 4046, 2005 WL 3164063, at *6 (S.D.N.Y. Nov. 29, 2005) (claim that officers committed perjury at the suppression hearing "seeks to attack the outcome of the suppression hearing" and "does not mean that [the state] provided [petitioner] with 'no corrective procedures' at all to redress the alleged Fourth Amendment violations. . . . Nor can it be said that the alleged perjury caused [petitioner] to be 'precluded from using' the suppression mechanism. Thus, *Stone v. Powell* bars [petitioner's] claim regarding perjury at the suppression hearing."); *United States ex rel. Pertz v. Carter*, No. 97 C 2066, 1998 WL 42273, at *3 (N.D.Ill. Jan. 29, 1998) (finding claim barred by *Stone* even though claim included allegation of perjury at suppression hearing).

*Id*. at 811-812. "Under *Stone*. . . the correctness of the state courts' conclusions is simply irrelevant." *Id*. at 812. *See also Jamison v. Knab*, No. 3:09-cv-297, 2011 WL 587293, at *4–5 (S.D. Ohio Jan. 31, 2011) (rejecting argument that petitioner was denied a full and fair opportunity to litigate his Fourth Amendment claim based on later discovery of evidence that police lied).

Similarly, in *United States v. Lee Vang Lor*, 706 F.3d 1252 (10th Cir. 2013), the Tenth District Court of Appeals rejected the petitioner's argument that he had been denied a full and fair opportunity to litigate his Fourth Amendment claim, where the petitioner later learned that the police officer initiating the traffic stop of his vehicle had been fired for calling in a false dispatch report:

> A defendant is not deprived of a full and fair opportunity to litigate simply because he does not discover all potentially relevant evidence until after his suppression

9

> hearing. Under *Stone*, habeas corpus relief is unavailable as long as the Government afforded "an opportunity for full and fair litigation of a Fourth Amendment claim." *Stone*, 428 U.S. at 482, 96 S.Ct. 3037 (emphasis added). Absent ineffective assistance of counsel or government concealment, a defendant cannot claim that the mere existence of undiscovered material evidence deprived him of an opportunity to litigate his claim. As the Court said in *Stone,* "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 482, 96 S.Ct. 3037.

*Id*. at 1259 (citing *Brock v. United States*, 573 F.3d 497, 501 (7th Cir. 2009) (holding that discovery of a previously unavailable witness who may have invalidated search warrant did not deprive the defendant of a full and fair opportunity to litigate the Fourth Amendment claim)).

Importantly, Petitioner does not allege, and the record does not reflect, any violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The record likewise does not indicate that Petitioner was unable to present his Fourth Amendment claim to the state courts such that he again may obtain review of this claim in these proceedings. As a result, Petitioner cannot satisfy AEDPA's high burden on claim one.

### B. CLAIM TWO

In claim two, Petitioner asserts that he was denied due process because the state courts denied his motion for a new trial based on the newly discovered evidence of police misconduct. This claim likewise does not provide a basis for relief.

Procedural posture matters to this claim. This is so because "when a state defendant files a motion for new trial before filing a direct appeal, and when the denial of that motion is then consolidated with and reviewed during the direct appeal, the motion for new trial is a part of the original criminal proceedings and is not a collateral proceeding." *Pudelski v. Wilson*, 576 F.3d 595, 610 (6th Cir. 2009). But where the motion for a new trial is filed after the conclusion of direct review, it is considered a part of the State's collateral or post-conviction review process. *See*

10

*Brown v. Warden, Lake Erie Corr. Inst.*, No. 1:11-cv-2765, 2014 WL 132367, at *17–18 n.12 (N.D. Ohio Jan. 14, 2014). That is what happened here. And, under these circumstances, habeas corpus does not provide relief. *See id.* (quoting *Farrow v. Anderson*, 1:08-cv-1429, 2009 WL 3004024 (N.D. Ohio Sept. 15, 2009)) ("[E]rrors in post-conviction proceedings are outside the scope of federal habeas corpus review."). "'[T]he writ [of habeas corpus] is not the proper means by which prisoners should challenge errors or deficiencies in state post-conviction proceedings … because the claims address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration.'" *Cassano v. Bradshaw*, No. 2018 WL 3455531, at *48 (N.D. Ohio July 18, 2018) (quoting *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986)) (following *Preiser v. Rodriguez*, 411 U.S. 475 (1973)).

> The Sixth Circuit succinctly explained the issue in *Cress v. Palmer:*
>
> A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not "result [in] ... release or a reduction in ... time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention." *Kirby*, 794 F.2d at 247. "Though the ultimate goal in" a case alleging post-conviction error "is release from confinement, the result of habeas review of the specific issue[ ] ... is not in any way related to the confinement." *Id.* at 248. Accordingly, we have held repeatedly that "the scope of the writ [does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings," noting that "the writ is not the proper means" to challenge "collateral matters" as opposed to "the underlying state conviction giving rise to the prisoner's incarceration." *Id.* at 248, 247; *see also Alley v. Bell,* 307 F.3d 380, 387 (6th Cir. 2002) ("error committed during state post-conviction proceedings can not [sic] provide a basis for federal habeas relief" (citing *Kirby*, 794 F.2d at 247) ); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001) ("habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief").

484 F.3d 844, 853 (6th Cir. 2007).

Applying that reasoning here, claim two does not provide a basis for relief.

**V. DISPOSITION**

For the reasons set forth above, it is **RECOMMENDED** that this action be **DISMISSED.**

## **Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

IT IS SO ORDERED.

Date: December 13, 2019  /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE